UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SOCORRO ESTRELLA,

    Plaintiff,

v.

MICHAEL J ASTRUE,

    Defendant.
_____/

No. C-10-05600 DMR

**ORDER GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT AND REMANDING FOR FURTHER PROCEEDINGS**

Plaintiff Socorro Estrella moves for summary judgment to reverse the Commissioner of the Social Security Administration's (the "Commissioner's") final administrative decision, which found Estrella not disabled and therefore denied her applications for benefits under Titles II and XIV of the Social Security Act, 42 U.S.C. §§ 401 and 1381 *et seq.* The Commissioner cross-moves to affirm. For the reasons below, the court grants Plaintiff's motion, denies the Commissioner's motion and remands this action for further proceedings.

**I. Procedural History**

Plaintiff Estrella filed for Title II Social Security disability insurance benefits ("SSDI") and Title XIV supplemental security income ("SSI"), alleging a disability onset date of November 20, 2005. (A.R. 42, 142.) Estrella's application was initially denied on February 22, 2008 (A.R. 79-83), and again on reconsideration on May 29, 2008 (A.R. 85-89), and Estrella requested a hearing. (A.R. 90-91.) After the August 25, 2009 hearing, the administrative law judge ("ALJ") issued a decision

finding Estrella not disabled. (A.R. 39-51.) Estrella filed a request for review of the hearing in January 2010 (A.R. 29), which the Appeals Council denied on October 1, 2010. (A.R. 5-9.) The ALJ's decision therefore became the final decision of the Commissioner. *Taylor v. Comm'r of Soc. Sec. Admin.*, 659 F.3d 1228, 1231 (9th Cir. 2011). Estrella then filed suit in this court pursuant to 42 U.S.C. § 405(g).

## II. Issue Presented

In this case, the ALJ determined that Estrella suffers from chronic neck and back pain, headaches, depression, and panic attacks, which are severe impairments. (A.R. 45.) Although the ALJ determined that Estrella is unable to perform her past work, he determined that she has the following residual functional capacity ("RFC") to perform light work:

> lift and carry 20 pounds occasionally, ten pounds frequently; sit and stand/walk six hours out of eight respectively; occasionally climb stairs, ramps, ropes, ladders, and scaffolds, stoop, kneel, crouch, and crawl; understand, remember, and carry out at least simple instructions and non-detailed tasks; and should not work in a setting which includes constant/regular contact with the general public.

(A.R. 48-49.) Relying on the opinion of a vocational expert who testified that an individual with such an RFC could perform a significant number of jobs existing in the economy, the ALJ concluded that Estrella is not disabled. (A.R. 49-50.)

Estrella challenges the ALJ's conclusion that she can perform "a range of light work." (A.R. 49.) Estrella argues that this conclusion must be reversed because it is not supported by substantial evidence; specifically, Estrella argues that the ALJ impermissibly rejected an examining physician's opinion that she would have difficulty maintaining a schedule on a consistent basis. (Pl.'s Mot. 5-7.) Therefore, the sole issue before this court is whether the ALJ erred in the manner in which he analyzed the opinion of an examining physician.

## III. Standard of Review

Pursuant to 42 U.S.C. § 405(g), this court has the authority to review a decision by the Commissioner denying a claimant disability benefits. The ALJ's underlying determination "will be disturbed only if it is not supported by substantial evidence or it is based on legal error." *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (internal quotation marks omitted).

Substantial evidence is evidence within the record that could lead a reasonable mind to accept a conclusion regarding disability status. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971). It is "more than a mere scintilla" but less than a preponderance. *Id*. If the evidence reasonably could support two conclusions, the court "may not substitute its judgment for that of the Commissioner" and must affirm the decision. *Jamerson v. Chater*, 112 F.3d 1064, 1066 (9th Cir. 1997) (citation omitted). "Finally, the court will not reverse an ALJ's decision for harmless error, which exists when it is clear from the record that the ALJ's error was inconsequential to the ultimate nondisability determination." *Tommasetti v. Astrue*, 533 F.3d 1035, 1038 (9th Cir. 2008) (citations and internal quotation marks omitted).

## IV. Discussion

Estrella contends the ALJ rejected the opinion of an examining physician, Tania Shertock, Ph.D.[1] that she would have difficulty maintaining a schedule on a consistent basis, and failed to give legally sufficient reasons for doing so.

### A. Dr. Shertock's Opinion

On January 24, 2008, at the request of the Social Security Administration ("SSA"), Estrella underwent a psychological evaluation by Dr. Shertock. (A.R. 316-319.) Estrella alleged anxiety, depression, chronic pain, and headaches. Dr. Shertock reviewed Estrella's records from the West Berkeley Family Practice and administered a mental status examination. Dr. Shertock made a number of findings, and diagnosed Estrella with posttraumatic stress disorder, major depressive disorder, and borderline intellectual functioning. Based upon these findings, Dr. Shertock's functional assessment of Estrella was that her "concentration[,] persistence and pace are moderately impaired," and that Estrella "is able to perform simple repetitive tasks, not detailed tasks and complex tasks." (A.R. 318.) Further, while noting that Estrella was on time for her appointment, Dr. Shertock stated that "we cannot predict she would be capable of conforming to a typical work

---

[1] For purposes of this opinion, the term "physician" or "doctor" includes psychologists such as Dr. Shertock, who do not have an M.D. *See* 20 C.F.R. § 404.1527(a)(2) (defining "medical opinions" as "statements from physicians and psychologists and other acceptable medical sources," and prescribing the respective weight to be given the opinions of treating sources and examining sources); *see also Lester v. Chater*, 81 F.3d 821, 830 n.7 (9th Cir. 1996).

schedule," and opined that Estrella "may have difficulty adapting to work stress and changes and *would have difficulty maintaining a schedule on a consistent basis*." (A.R. 318; emphasis added.)

In his decision, the ALJ recited portions of Dr. Shertock's opinion, and concluded that Dr. Shertock limited Estrella to "simple, repetitive tasks with limited public contact." (A.R. 46.) However, the ALJ did not discuss or even mention Dr. Shertock's opinion that Estrella "would have difficulty maintaining a schedule on a consistent basis," and specifically noted that Dr. Shertock "did not impose any other significant functional limitations" on Estrella. (A.R. 46.)

### B. Applicable Law

When reviewing an ALJ's medical opinion determinations, courts distinguish between three types of physicians: those who treat the claimant ("treating physicians"); and two categories of "nontreating physicians," those who examine but do not treat the claimant ("examining physicians") and those who neither examine nor treat the claimant ("nonexamining physicians"). *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). A treating physician's opinion is entitled to more weight than an examining physician's opinion, and an examining physician's opinion is entitled to more weight than a nonexamining physician's opinion. *Id.*

To reject the opinion of an uncontradicted treating or examining physician, an ALJ must provide "clear and convincing reasons." *Lester*, 81 F.3d at 830; *see also* § 416.927(d)(2); SSR 96-2p. If another doctor contradicts a treating or examining physician, the ALJ must provide "specific and legitimate reasons" supported by substantial evidence to discount the treating or examining physician's opinion. *Lester*, 81 F.3d at 830-31. The ALJ meets this burden "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998). A nonexamining physician's opinion alone cannot constitute substantial evidence to reject the opinion of an examining or treating physician, *Pitzer v. Sullivan*, 908 F.2d 502, 506 n.4 (9th Cir. 1990), though it may be persuasive when supported by other factors. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2002) (noting that opinion by "non-examining medical expert . . . may constitute substantial evidence when it is consistent with other independent evidence in the record"); *Magallanes*, 881 F.2d at 751-55 (upholding rejection of treating physician's opinion given

contradictory laboratory test results, reports from examining physicians, and testimony from claimant). An opinion more consistent with the record as a whole generally carries more persuasiveness. *See* § 416.927(d)(4).

**C. Analysis**

Estrella contends that the ALJ's statement that Dr. Shertock did not impose any significant functional limitations on Estrella, other than limiting her to "simple, repetitive tasks with limited public contact," is incorrect, and that Dr. Shertock's statement about Estrella's potential inability to maintain a consistent schedule is a work-related limitation, separate and apart from the ability to perform simple repetitive tasks. (Pl.'s Mot. 6-7.) Accordingly, Estrella argues that the ALJ misapplied the regulatory standard for considering physician opinions when it wholly ignored (and thus rejected) the opinion of Dr. Shertock. Estrella argues that that particular opinion offered by Dr. Shertock was uncontradicted, and that the ALJ failed to "state clear and convincing reasons that are supported by substantial evidence" for rejecting that opinion. (Pl.'s Mot. 6-7, citing *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).) The Commissioner argues that Dr. Shertock's opinion was too vague to consider, and that even if considered, it is *not* uncontradicted, as the ALJ relied on other evidence to find that Estrella could sustain full-time work on a consistent basis.

The ALJ's decision is silent on the question of whether he considered Dr. Shertock's opinion to be contradicted or uncontradicted. In support of the position that Dr. Shertock's opinion was contradicted, the Commissioner points to two things. First, the Commissioner highlights the ALJ's discussion of Estrella's treatment notes, which the ALJ characterized as demonstrating that she "was generally stable, pleasant, and cooperative and received only conservative treatment." (Def.'s Mot. 5.) Second, the Commissioner points to the opinion of Vallabhaneni Meenakshi, M.D., a non-examining, non-treating state agency psychiatric consultant who concluded that Estrella could perform "simple tasks with [limited] public contact" and imposed no other restrictions. (Def.'s Mot. 5; A.R. 341.)

Following a careful review, the court concludes that the evidence in the record does not contradict Dr. Shertock's opinion about Estrella's ability to maintain a consistent schedule. The only evidence the ALJ cited to support his statement that Estrella was "treated conservatively" were

5

1 progress reports from the West Berkeley Family Practice for the time period December 2007
2 through March 2008. (A.R. 46, *citing* Ex. 13F (A.R. 356-370).) The ALJ does not explain what he
3 meant by conservative treatment, nor do the progress reports provide clear support for such an
4 assertion. The reports show Estrella was referred to a therapist at West Berkeley Family Practice for
5 treatment of panic attacks and anxiety. (A.R. 370.) She began seeing a therapist in December 2007
6 (A.R. 369), and it appears she attended therapy sessions on a weekly basis through March 2008.
7 (A.R. 356-369.) Notes from these sessions from January through March 2008 indicate Estrella was
8 diagnosed with major depressive disorder (A.R. 356, 359, 360, 365) and in February, she was
9 diagnosed with major depressive disorder with possible "delusional/paranoid features." (A.R. 361.)
10 The notes also reveal that Estrella was also taking Effexor and Trazodone, medications used to treat
11 depression, throughout that time. (A.R. 357, 359, 365, 366.)

12 In the same discussion of the West Berkeley Family Practice treatment notes, the ALJ also
13 wrote that "the claimant's mental status was stable on multiple occasions . . . [s]he was frequently
14 described as pleasant and cooperative and her mood and affect were 'okay.'" (A.R. 46.) However,
15 while notes from a February 2008 appointment indicate that she was "casually, neatly dressed," and
16 "friendly to therapist," the therapist also noted that Estrella felt she was "close to losing [her] mind
17 again," and that she "varies between realistic concerns [and] paranoid flavor." (A.R. 361.) At
18 another appointment in January 2008, the therapist noted that her mood and affect were "okay in
19 session," but that she had an "unusual, disconnected emotional tone" when discussing a childhood
20 rape. (A.R. 362.) Further, while treatment notes from March 2008 indicate that Estrella was
21 "cooperative [and] cheerful," they also indicate that there was a "disconnect between her affect [and]
22 content of words." (A.R. 358.)

23 Dr. Meenakshi's opinion also does not contradict Dr. Shertock's opinion about Estrella's
24 ability to maintain a consistent schedule. Dr. Meenakshi, who did not examine Estrella, assessed her
25 functional capacity in February 2008, and opined that Estrella had moderate impairment in social
26 functioning, and maintaining concentration, persistence, or pace. This is consistent with Dr.
27 Shertock's opinion. (*Compare* A.R. 328-341, *with* A.R. 318.) While Dr. Meenakshi concluded that
28 Estrella could perform "simple tasks with [limited] public contact," he also found that her ability to

1  "complete a normal workday and workweek without interruptions from psychologically based
2  symptoms and to perform at a consistent pace without an unreasonable number and length of rest
3  periods" was moderately limited. (A.R. 340, 341.) Although it is not clear whether Dr. Meenakshi
4  viewed this as a significant limitation, it is certainly not *inconsistent* with Dr. Shertock's opinion
5  regarding Estrella's ability to maintain a consistent schedule.

6       The court concludes that regardless of whether the ALJ considered Dr. Shertock's opinion
7  contradicted or uncontradicted, the ALJ committed clear legal error in rejecting her opinion without
8  an explanation or analysis. An individual's RFC is defined as "an assessment of an individual's
9  ability to do sustained work-related physical and mental activities in a work setting on a *regular and*
10 *continuing basis*." SSR 96-8P (emphasis added). SSA defines the phrase "regular and continuing
11 basis" to mean "8 hours a day, for 5 days a week, or an equivalent work schedule." *Id.*
12 Accordingly, the ability to maintain a consistent schedule is a necessary requirement of substantial
13 gainful activity. *See Dobrowolsky v. Califano*, 606 F.2d 403, 408 (3d Cir. 1979) (ability to engage
14 in substantial gainful employment "means more than the ability to do certain of the physical and
15 mental acts required in the job; the claimant must be able to sustain the activity through continuous
16 attendance in a regular work-week."). Yet in his analysis of Estrella's RFC, the ALJ made no
17 mention of Dr. Shertock's opinion regarding her potential inability to maintain a consistent schedule.
18 As Dr. Shertock was an examining physician, the ALJ was required to provide either "clear and
19 convincing reasons" supported by substantial evidence, or "specific and legitimate reasons"
20 supported by substantial evidence, in order to discount her opinion. *See Lester*, 81 F.3d at 830-31.
21 The ALJ's failure to provide either constitutes legal error. Moreover, the error was not harmless. In
22 order for an error to be harmless, it must be "clear from the record that the ALJ's error was
23 inconsequential to the ultimate nondisability determination." *Tommasetti*, 533 F.3d at 1038. Here,
24 because "the ALJ's error in rejecting [Dr. Shertock's] opinion ultimately led to an adverse disability
25 finding, it was not harmless." *Widmark v. Barnhart*, 454 F.3d 1063, 1069 n.4 (9th Cir. 2006).

26      Finally, the Commissioner also argues that Dr. Shertock's statement about Estrella's
27 potential inability to maintain a consistent schedule is "vague," as she also stated in her opinion that
28 she could not "predict whether Plaintiff could conform to a typical work schedule." (Def.'s Mot. 4.)

It is important to note that Dr. Shertock made two separate statements about Estrella's ability to maintain a schedule. First, she noted that although Estrella was on time for her appointment, she could not "predict [Estrella] would be capable of conforming to a typical work schedule." (A.R. 318.) However, she also stated that Estrella "may have difficulty adapting to work stress and changes and would have difficulty maintaining a schedule on a consistent basis." (A.R. 318.) While the first statement is somewhat vague, the second statement is not. Assuming *arguendo* that the ALJ considered both statements vague, it was not appropriate for him to simply disregard them. The ALJ has a "duty to fully and fairly develop the record," (*Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (internal citation and quotation marks omitted)), and "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'" *Tonapetyan*, 242 F.3d at 1150 (citing *Smolen*, 80 F.3d at 1288); *see also* 20 C.F.R. § 404.1512(e); 20 C.F.R. § 416.912(e) (providing that SSA is to recontact medical sources to seek "additional evidence or clarification from [a] medical source when [a report] contains a conflict or ambiguity that must be resolved.").

### V. Conclusion

The court finds that the ALJ failed to provide either "clear and convincing reasons" supported by substantial evidence, or "specific and legitimate reasons" supported by substantial evidence, in order to reject Dr. Shertock's opinion regarding Estrella's ability to maintain a consistent schedule. *See Lester*, 81 F.3d at 830-31. This constitutes legal error that is not harmless. Accordingly, the court grants Plaintiff's motion for summary judgment in part and remands this case to the Commissioner for further proceedings consistent with this opinion.

IT IS SO ORDERED.

Dated: February 27, 2012

DONNA M. RYU
United States Magistrate Judge